**Robert Dan ORR, Petitioner–Appellant,**

v.

**Kathleen M. HAWK, Respondent–Appellee.**

No. 96–6498.

United States Court of Appeals,
Sixth Circuit.

Submitted Aug. 6, 1998.

Decided Sept. 9, 1998.

Robert Dan Orr, Amory, MS, pro se.

Brian J. Quarles, Asst. U.S. Attorney (briefed), Office of the U.S. Attorney, Memphis, TN, for Respondent–Appellee.

Before: KRUPANSKY, NORRIS, and SILER, Circuit Judges.

## OPINION

SILER, Circuit Judge.

Petitioner Robert Dan Orr appeals the dismissal of his petition for a writ of habeas corpus under 28 U.S.C. § 2241. As set forth below, we REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion.

## I.

Orr was a prisoner in the custody of the Federal Bureau of Prisons ("BOP") at the Federal Prison Camp at Millington, Tennessee, before the expiration of his sentence in March 1998. He is currently on supervised release.

Orr was convicted in the United States District Court for the Northern District of Mississippi on one count of conspiracy to distribute and possess with intent to distribute a Schedule II Controlled Substance in violation of 21 U.S.C. §§ 841 and 846, and one count of possession of a firearm by a previously convicted felon in violation of 18 U.S.C. §§ 922(g), 924(a)(2), and 3571(b)(3). In 1991, he was sentenced to a term of imprisonment of ninety-six months for each offense to run concurrently, plus supervised release.

In the course of his incarceration, Orr enrolled in a "Comprehensive Drug Abuse Treatment Program" and successfully completed it in 1994. In 1996, Orr petitioned the BOP for a one-year reduction in his sentence as provided in 18 U.S.C. § 3621(e)(2)(B). The BOP denied this petition, reasoning that Orr was specifically precluded from taking advantage of the sentence reduction because his felon-in-possession conviction was a crime of violence within the meaning of 18 U.S.C. § 924(c)(3). In addition, the BOP pointed to an internal rule—Program Statement 5162.02—explicitly listing all offenses the BOP deemed to be crimes of violence. Included in that list was 18 U.S.C. § 922(g), the felon-in-possession statute.

After exhausting his administrative remedies, Orr filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 in the United States District Court for the Western District of Tennessee alleging that the BOP had deprived him of his right to early release without due process of law. He further claimed that the BOP's definition of "crime of violence" conflicted with the United States Sentencing Commission's definition set forth at USSG § 4B1.2, comment. (n. 2). Finally, Orr alleged that by treating him differently from other nonviolent offenders, the BOP had denied him his right to the equal protection of the laws.

The district court dismissed Orr's petition. It held that: (1) Orr had no liberty interest in his early release and thus stated no due process claim; (2) the BOP's decision whether to grant early release is not subject to judicial review; (3) applying minimal scrutiny to Orr's equal protection claim, the "classification" involved is not arbitrary and furthers a legitimate government interest; and (4) the BOP did not exceed its statutory authority by excluding those convicted under 18 U.S.C. § 922(g) from consideration for early release because the BOP could have denied Orr early release for any or no reason even if the agency had not so broadly defined the term "crime of violence."

Since the filing of the briefs in this appeal, the BOP has changed its regulations concerning eligibility for early release. Whereas 28 C.F.R. § 550.58 defined crimes of violence by reference to 18 U.S.C. § 924(c)(3), which contains no language that would include mere possessory offenses, that section now specifically renders ineligible for early release any felony inmate whose offense "involved the carrying, *possession*, or use of a firearm...." 28 C.F.R. § 550.58(a)(1)(vi)(B) (emphasis added).

## II.

18 U.S.C. § 3621(e)(1)(C), passed in 1994, requires that "the Bureau of Prisons ... provide residential substance abuse treatment ... for all eligible prisoners by the end of fiscal year 1997...." As an incentive for prisoner participation in such treatment programs, the statute allows an inmate convicted

of a "nonviolent offense" to receive a reduction in sentence of up to one year. 18 U.S.C. § 3621(e)(2)(B). Nothing in the statute requires the BOP to grant early release to any eligible prisoner. Thus, it suggests that the agency has substantial discretion in its decisionmaking.

Because the statute does not define "nonviolent offense," the BOP chose to define the term by looking to what are not nonviolent offenses, *i.e.,* crimes of violence. This court, as well as a number of other courts, has held that in interpreting the otherwise undefined term "nonviolent offense," courts must do so by reference to the term "crime of violence." *See United States v. Maddalena,* 893 F.2d 815, 819 (6th Cir.1989); *United States v. Mayotte,* 76 F.3d 887, 889 (8th Cir.1996); *United States v. Dailey,* 24 F.3d 1323, 1325–26 (11th Cir.1994); *United States v. Poff,* 926 F.2d 588, 592 (7th Cir.1991); *United States v. Russell,* 917 F.2d 512, 517 (11th Cir.1990); *United States v. Borrayo,* 898 F.2d 91, 94 (9th Cir.1990); *United States v. Rosen,* 896 F.2d 789, 791 (3d Cir.1990). The agency therefore initially adopted the definition of crime of violence set forth in 18 U.S.C. § 924(c)(3). 28 C.F.R. § 550.58 (1997), *amended by* 62 Fed.Reg. 53,691 (1997)(to be codified at 28 C.F.R. § 550.58). Under that regulation, a prisoner was expressly ineligible for early release if his offense was a felony (1) that "ha[d] as an element the use, attempted use, or threatened use of physical force against the person or property of another," or (3) that, "by its nature, involve[d] a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3).

The BOP, however, has since amended 28 C.F.R. § 550.58 to add language based, in part, on a repealed section of the Public Health and Welfare Title. 62 Fed.Reg. 53691 (1997) (to be codified at 28 C.F.R. § 550.58). The *definition in the new* § 550.58 is an amalgam of different United States Code sections, rather than merely drawing from § 924(c)(3). This now includes the § 924(c)(3) language virtually verbatim, but additionally provides, in relevant part, that "[i]nmates whose current offense is a felony ... [t]hat involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives" are ineligible for early release. 62 Fed.Reg. 53691 (1997) (to be codified at 28 C.F.R. § 550.58). The former 42 U.S.C. § 3796ii–2 contained remarkably similar language, defining a "violent offender" as one who "is charged with or convicted of an offense, during the course of which offense or conduct ... [the accused] carried, possessed, or used a firearm or dangerous weapon...." 42 U.S.C. § 3796ii–2(1)(A) (repealed 1996). The BOP has at least implicitly acknowledged in other litigation that its new definition of crime of violence derives from the repealed statute. *Sesler v. Pitzer,* 110 F.3d 569, 571–572 (8th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 197, 139 L.Ed.2d 135 (1997); *Davis v. Crabtree,* 109 F.3d 566, 569–570 (9th Cir.1997).

**III.**

■ As an initial matter, there is a substantial question as to whether the amended regulation can apply to Orr's case. Agency rules typically will not apply retroactively in the absence of an express statutory authorization of retroactive rulemaking. *Bowen v. Georgetown University Hospital,* 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). This is as true of interpretive rules, like § 550.58, as it is of legislative rules. *Bauer v. Varity Dayton–Walther Corp.,* 118 F.3d 1109, 1111 n. 1 (6th Cir.1997). Indeed, the Ninth Circuit has specifically held that unfavorable changes to BOP rules construing 18 U.S.C. § 3621(e)(2)(B) cannot apply to prisoners who started the substance abuse treatment program prior to the change. *Cort v. Crabtree,* 113 F.3d 1081, 1086–87 (9th Cir.1997) (addressing BOP amendment to definition of crime of violence to include unarmed bank robbery). *But see Royal v. Tombone,* 141 F.3d 596, 601–602 (5th Cir. 1998) (disagreeing with Ninth Circuit's conclusion in *Cort* and holding that aggrieved prisoner must show that he was actually entitled to sentence reduction prior to issuance of new rule in order to avoid application of that rule).

■ However, there are at least two factors allowing the application of the new

§ 550.58 in this case. First, because a law must "take[ ] away or impair[ ] vested rights acquired under existing laws, or create[ ] a new obligation, impose[ ] a new duty, or attach[ ] a new disability, in respect to transactions or considerations already past" in order to be retroactive, *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (internal quotation and citation omitted), it is questionable whether applying the new § 550.58 to Orr would be a "retroactive" application of the regulation. Neither the Constitution, nor 18 U.S.C. § 3621(e)(2)(B), nor the original 28 C.F.R. § 550.58 creates a liberty interest in early release. *See Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983) (where statute leaves decisionmaker with unfettered discretion over grant or denial of benefit, no liberty interest in that benefit); *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) (no generalized constitutional right to reduced sentence). Where an interest is not a protected one, there is no cognizable harm to the individual when deprived of that interest. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). Perhaps even more compelling is the fact that Orr never changed his position in reliance on the possibility of early release. He completed the substance abuse treatment program on September 9, 1994, while Congress did not even enact the statute allowing for early release for participation in such programs until September 13, 1994. Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103–322, § 32001, 108 Stat. 1896 (1994). Because Orr had no vested right to early release and, apparently, had no idea he might be eligible for consideration for early release by completing the prison drug program, he has no legal interest which the new § 550.58 might offend.

■ Second, even if Orr has a protected interest, the amended regulation might properly apply to Orr as a clarifying rule. So long as a change in a regulation does not announce a new rule, but rather merely clarifies or codifies an existing policy, that regulation can apply retroactively. A rule clarifying an unsettled or confusing area of the law "does not change the law, but restates what the law according to the agency is and has always been: 'It is no more retroactive in its operation than is a judicial determination construing and applying a statute to a case in hand.'" *Pope v. Shalala*, 998 F.2d 473, 483 (7th Cir.1993) (quoting *Manhattan General Equipment Co. v. Commissioner*, 297 U.S. 129, 135, 56 S.Ct. 397, 80 L.Ed. 528 (1936)). Here, the BOP had an existing policy of defining 18 U.S.C. § 922(g) convictions as crimes of violence under Program Statement 5162.02. Although the definition contained in the amended regulation differs in substance from that set forth in 18 U.S.C. § 924(c)(3), the agency has been consistent in its interpretation of its regulation and enabling statute to include felon in possession of a firearm as a crime of violence. Moreover, the Federal Register notice publishing the interim § 550.58 specifically noted that the purpose of the amendment was to clarify the scope of its definition in view of inconsistent interpretations by the courts. 62 Fed.Reg. 53690 (1997). Thus, the new § 550.58 does not represent a change in position for the BOP, and accordingly might apply retrospectively.

## IV.

■ As a second but still preliminary matter, this court must determine the appropriate measure of deference to accord the new BOP rule. In examining the agency's earlier internal rule, Program Statement 5162.02, other courts have applied relatively greater scrutiny than they would have had that rule been a published regulation subject to the rigors of notice and comment. *See Fristoe v. Thompson*, 144 F.3d 627, 631 (10th Cir.1998); *Fuller v. Moore*, No. 97–6390, 133 F.3d 914, 1997 WL 791681 at *2 (4th Cir. Dec.29, 1997); *Roussos v. Menifee*, 122 F.3d 159, 163 (3d Cir.1997); *Davis*, 109 F.3d at 568–569; *Miller v. United States*, 964 F.Supp. 15, 17 n. 3 (D.D.C.1997). *See also Reno v. Koray*, 515 U.S. 50, 60, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995) (BOP interpretive rules not entitled to full deferential treatment under *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). *But see Love v. Tippy*,

133 F.3d 1066, 1068 n. 6 (8th Cir.), *cert. denied,* — U.S. ——, 118 S.Ct. 2376, 141 L.Ed.2d 743 (1998) (according BOP interpretations of its own regulations controlling weight unless plainly erroneous or inconsistent with those regulations); *Parsons v. Pitzer,* 960 F.Supp. 191, 193 (W.D.Wis.1997) (deferring to agency interpretation under *Chevron* ).

By formally codifying the BOP's determination that mere possessory offenses qualify as crimes of violence, at least for early release purposes, the agency presumably hoped to receive the benefit of full *Chevron* deference, and thus to avoid some of the difficulties it encountered in the litigation surrounding Program Statement 5162.02 and 18 U.S.C. § 924(c)(3). *See* 62 Fed.Reg. 53690 (expressing the need ·for a published rule to clarify ambiguity arising out of inconsistent decisions). *See also Bush v. Pitzer,* 133 F.3d 455, 457–58 (7th Cir.1998) (characterizing the new 28 C.F.R. § 550.58 as a product of a notice and comment rulemaking entitled to *Chevron* deference).

Nonetheless, we will apply the same level of scrutiny applied to the earlier internal rule. The new § 550.58 is only an interim rule. 62 Fed.Reg. 53690–91. This is to say that although the rule has the force and effect of a published regulation, it is not the product of a notice and comment rulemaking process, and is therefore akin to an internal rule entitled to only limited deference. *Reno,* 515 U.S. at 60, 115 S.Ct. 2021; *Fristoe,* 144 F.3d at 631; *Fuller,* 1997 WL 791681, at *2; *Roussos,* 122 F.3d at 163; *Davis,* 109 F.3d at 568–569; *Miller,* 964 F.Supp. at 17 n. 3. In light of these decisions, there appears to be no reason to give any greater deference to its interim rule than to its internal interpretive rules.[1]

## V.

■ Having determined that the new § 550.58 applies to Orr, and that the new rule should receive the same measure of deference as that afforded to the agency's Program Statement 5162.02, we now hold that the BOP's exclusion of mere possessory offenders from consideration for early release is improper. As set forth above, the agency has no choice but to define "nonviolent offense" under 18 U.S.C. § 3621(e)(2)(B) by reference to what might constitute a crime of violence. *See United States v. Maddalena,* 893 F.2d 815, 819 (6th Cir.1989); *United States v. Mayotte,* 76 F.3d 887, 889 (8th Cir.1996); *United States v. Dailey,* 24 F.3d 1323, 1325–26 (11th Cir.1994); *United States v. Poff,* 926 F.2d 588, 592 (7th Cir. 1991); *United States v. Russell,* 917 F.2d 512, 517 (11th Cir.1990); *United States v. Rosen,* 896 F.2d 789, 791 (3d Cir.1990); *United States v. Borrayo,* 898 F.2d 91, 94 (9th Cir.1989). *But see Royce v. Hahn,* 151 F.3d 116, 121 (3d Cir.1998) (noting that in light of omission from the new § 550.58 of any mention of "crime of violence," that term is now irrelevant for § 3621(e) purposes). It follows, then, that if the BOP cannot deny eligibility for consideration for early release to anyone who has committed a nonviolent offense, it can deny eligibility only to those who have committed a crime of violence.

No section of the United States Code defines crimes of violence—with the exception of the repealed 42 U.S.C. § 3796ii–2(1)(A)— to include 18 U.S.C. § 922(g) as a violent

---

1. There is, however, a complicating factor which other courts addressing this matter have not discussed. As set forth in 18 U.S.C. § 3625, the BOP need not ever comply with the requirements of more formal rulemakings, as the agency is statutorily exempt from the provisions of 5 U.S.C. §§ 554, 555, and 701–706 concerning judicial review and notice and comment proceedings.

This exemption raises an interesting question— if an internal rule which the agency could change at its whim receives somewhat less deference than a formal rule, how should courts treat published rules which the agency can change with equal impunity? On the one hand, logic suggests that because the process by which the agency promulgates both internal and published rules is effectively the same, both sorts of rules are entitled to the same measure of deference, *i.e.,* less than full *Chevron* deference. On the other hand, it seems somewhat perverse that the Congress would explicitly vest in the BOP a great deal of discretion by exempting it from compliance with the Administrative Procedure Act, but at the same time deprive the agency's rules of the protection of the *Chevron* decision.

Nevertheless, out of reluctance to break with our sister circuits, we decline to fashion an exception to the rule set out in the decisions cited in the text above.

crime. Several sections of the Criminal Code define crimes of violence, but none mentions mere possessory offenses as falling within its purview. With no noteworthy exceptions, every section of Title 18 relies on a virtually identical definition of crime of violence, to wit:

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16. This court, as well as a number of our sister courts of appeals, has held that this definition does not encompass § 922(g) offenses. *United States v. Hardon*, No. 98–1625, 1998 WL 320945, at *1, 149 F.3d 1185 (6th Cir. June 4, 1998) (construing 18 U.S.C. § 3156(a)(4)); *Royce*, 151 F.3d at 123 (construing 18 U.S.C. § 4042(b)(3)(B)); *Davis*, 109 F.3d at 569 (construing 18 U.S.C. § 3621(e)(2)(B)); *United States v. Doe*, 960 F.2d 221, 224 (1st Cir.1992) (construing 18 U.S.C. § 924(e)). Indeed, the one section of the Criminal Code providing a definition of crimes of violence directly applicable to the BOP specifically references the definition set forth above. 18 U.S.C. § 4042(b)(3)(B)

Finally, one decision addressing a definition of crime of violence which would include possessory offenses has dubbed that definition "inappropriate," at least as applied in an 18 U.S.C. § 3621(e)(2)(B) context. *Davis*, 109 F.3d at 569–70. In response to the BOP's argument that designating 18 U.S.C. § 922(g) violations as crimes of violence was permissible because Congress had done precisely that under 42 U.S.C. § 3796ii–2(1)(A) (repealed 1996), the Ninth Circuit held that the agency could not reasonably adopt the Title 42 definition because the purposes for which Congress established that definition are too dissimilar to the purposes of § 3621(e)(2)(B). *Id.* at 570. The court

seemed to suggest that a definition derived from Title 18 would be more appropriate given the fact that § 3621(e)(2)(B) falls under that title. *Id.*[2]

In view of the absence of statutory support for the agency's definition of "nonviolent offense," or, conversely, "crime of violence," as well as the body of decisional law construing the term "crime of violence" not to include § 922(g) violations, the BOP cannot reasonably refuse to consider those convicted as felons in possession for early release under § 3621(e)(2)(B). We therefore reverse the district court's dismissal of Orr's petition, and remand with instructions to issue an order consistent with this opinion.

**REVERSED.**

---

2. The Eighth Circuit initially adopted a contrary view of the propriety of using the former 42 U.S.C. § 3796ii–2 definition of crime of violence, deeming it rational for the BOP to rely on that definition. *Sesler v. Pitzer*, 110 F.3d 569, 571–

572 (8th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 197, 139 L.Ed.2d 135 (1997). That court has since abandoned that position in favor of the view espoused in *Davis*. *Martin v. Gerlinski*, 133 F.3d 1076, 1080 (8th Cir.1998).