In re Larry Dean **CROWELL** and Mary Susan Crowell, Debtors.

Larry Dean Crowell and Mary Susan Crowell, Plaintiffs–Appellants,

v.

United States of America Internal Revenue Service, Defendant– Appellee.

In re Duane C. Olcsvary and Patricia C. Oclsvary, Debtors.

Duane C. Olcsvary and Patricia C. Olcsvary, Plaintiffs– Appellants,

v.

United States of America Internal Revenue Service, Defendant– Appellee.

No. 1:00–CV–70.
Bankruptcy Nos. 96–14256, 96–14646.
Adversary Nos. 98–1161, 98–116.

United States District Court,
E.D. Tennessee,
at Chattanooga.

Feb. 7, 2001.

---

Court must uphold the findings of fact made by the Bankruptcy Court unless those findings are determined to be clearly erroneous. The Bankruptcy Court's conclusions of law are reviewed *de novo* on appeal. *Rembert v. AT&T Universal Card Servs. (In re Rembert)*, 141 F.3d 277, 280 (6th Cir.1998); *In re 255 Park Assocs. Ltd. P'ship*, 100 F.3d 1214, 1216 (6th Cir.1996). This Court has the authority to affirm, modify, or reverse the judgment of the Bankruptcy Court, and also may remand the case to the Bankruptcy Court for further proceedings. FED. R. BANKR. P. 8013.

## II. Background

The facts of this case are undisputed. The Crowells and the Olcsvarys were among over five thousand individual investment partners in various cattle-breeding tax shelter partnerships owned and operated by W.J. Hoyt III ("the Hoyt partnerships"). To settle their tax liabilities for the tax years relevant to this appeal, the Crowells and the Olcsvarys entered into written agreements with the appellee, the Internal Revenue Service ("IRS"). These agreements, known as "Form 906 Closing Agreements," purportedly resolved disputes between the IRS and the appellants concerning tax treatment of partnership items.

The sole issue on appeal arises out of the execution of these agreements on behalf of the IRS by Associate Chief of Appeals R.M. Spooner ("Spooner"). At the time Spooner executed the agreements, the Hoyt partnerships had issues docketed before the United States Tax Court. That the Hoyt partnerships had docketed issues at the time bears heavily on this appeal. Among the orders of the Commissioner of Internal Revenue delegating settlement authority to functionaries such as Spooner, Delegation Order 97 ("DO 97") appears to bar an IRS employee in Spooner's position from executing a closing agreement relevant to a case docketed in the Tax Court.

Kyle R. Weems, Chattanooga, TN, for Plaintiffs.

Jason S. Zarin, U.S. Department of Justice, Tax Division, Washington, DC, for Defendant.

## MEMORANDUM

EDGAR, Chief Judge.

This matter is a direct appeal from an order of the United States Bankruptcy Court for the Eastern District of Tennessee on February 1, 2000. Appellants Larry Dean Crowell and Mary Susan Crowell, Duane C. Olcsvary, and Patricia C. Olcsvary ("the Crowells and the Olcsvarys") bring this appeal pursuant to 28 U.S.C. § 158(a) and FED. R. BANKR. P. 8001–8002. After carefully examining the record, the Court concludes that the Bankruptcy Court's decision is correct, and it shall be **AFFIRMED**. The appeal shall be **DISMISSED**.

## I. Standard of Review

The Bankruptcy Court is the finder of fact. *In re Isaacman*, 26 F.3d 629, 631 (6th Cir.1994); *In re Caldwell*, 851 F.2d 852, 857 (6th Cir.1988). This

*Deleg. Order No. 97 (Rev.32),* 1995 WL 768847 [1].

The IRS concedes that if DO 97 is the governing settlement authority for the Crowells and the Olscarys, then the closing agreements are invalid because Spooner lacked the authority to execute them. The IRS argues, and the Bankruptcy Court concluded, that a different order, Delegation Order 209 ("DO 209"), applies under the circumstances of this case, and renders the agreements valid. *Deleg. Order No. 209 (Rev.5),* 1991–1 C.B. 312 [2].

### III. Analysis

#### A. IRS Settlement Authority and DO 97

■ 26 U.S.C. § 7121 provides the general statutory authorization for the Secretary of the Treasury ("the Secretary") to settle tax liability disputes. Pursuant to this section, entitled "Closing agreements," an agreement approved by the Secretary concerning an individual's tax liability has "final and conclusive" effect, in the absence of fraud or wrongdoing. 26 U.S.C. § 7121(b); *In re Spendthrift Farm, Inc.,* 931 F.2d 405, 407 (6th Cir.1991). The Secretary has delegated the authority to administer and enforce the Internal Revenue Code to the Commissioner of Internal Revenue ("the Commissioner"). Treas. Order 150–10 (April 22, 1982) (Court File No. 4, Ex. 7). Treasury Department regulations specifically authorize the Commissioner to enter into written closing agreements regarding tax liability, and endow these agreements with conclusive effect. 26 C.F.R. § 301.7121–1(a), (c).

Through DO 97, the Commissioner delegates the general responsibility for the execution of closing agreements to IRS officials and employees. DO 97 provides, in relevant part:

> The Assistant Commissioner (International); Regional Commissioners; Regional Counsel; Regional Chief Compliance Officers; Service Center Directors; Director, Austin Compliance Center, District Directors; Chiefs and *Associate Chiefs of Appeals Offices;* and Appeals Team Chiefs with respect to his/her team cases, are hereby authorized in cases under their jurisdiction (*but excluding cases docketed before the United States Tax Court*) to enter into and approve a written agreement with any person relating to the Internal Revenue tax liability of such person (or of the person or estate for whom he/she acts) for a taxable period or periods ended prior to the date of agreement and related specific items affecting other taxable periods.

DO 97(4) (emphasis added).

The plain language of DO 97 appears to invalidate the agreements between the IRS and the Crowells and the Olcsvarys. At the time Associate Chief of Appeals Spooner executed the closing agreements, the Hoyt partnerships had matters docketed in the Tax Court. According to DO 97, these circumstances prohibit Spooner from entering into a closing agreement. The Bankruptcy Court for the District of Oregon has explicitly held that Spooner lacked authority, under DO 97, to execute a closing agreement under similar circumstances. *In re Klee,* 216 B.R. 42, 44

---

1. The effective date of this revision of DO 97 is May 11, 1995. The current version of DO 97 became effective August 18, 1997. Deleg. Order 97 (Rev.34), 1997–2 C.B. 285. The 1995 revision, or one substantially similar to it, was in effect at the time Spooner executed the agreements with the Crowells and the Olcsvarys. The Bankruptcy Court utilized the 1995 language in its opinion.

 This Court has compared the pertinent language of both revisions and finds that any differences are in form, rather than sub-

stance. The Court's analysis of the issues raised in this appeal would thus be the same under either the 1995 (Rev.32) or 1997 (Rev.34) revision of DO 97. For the sake of consistency with the Bankruptcy Court, the Court shall rely on the 1995 revision. Subsections of DO 97 shall be indicated with parentheses. *E.g.,* DO 97(1).

2. Subsections of DO 209 shall be indicated with parentheses. *E.g.,* DO 209(3e).

(Bkrtcy.D.Or.1997). The absence of such authority, as the *Klee* court held, voids the agreement. *Id.* at 44–45. *See Botany Worsted Mills v. United States,* 278 U.S. 282, 288–89, 49 S.Ct. 129, 73 L.Ed. 379 (1929); *Urso v. United States,* 72 F.3d 59, 60 (7th Cir.1995); *Klein v. Commissioner,* 899 F.2d 1149, 1153 (11th Cir.1990); *Union Pac. R.R. Co. v. United States,* 847 F.2d 1567, 1569–70 (Fed.Cir.1988); *Estate of Jones v. Commissioner,* 795 F.2d 566, 572–73 (6th Cir.1986). The IRS acknowledges that if DO 97 governs the agreements between it and the appellants, then Spooner lacked authority to execute them and they are invalid.

## B. DO 209

The IRS argues that the Commissioner has issued a more specific delegation of authority to execute closing agreements, DO 209. According to the IRS, DO 209 displaced DO 97 under the circumstances of this case, and vested proper authority in Spooner to execute the agreements. The pertinent sections of DO 209 provide:

> Pursuant to the authority vested in the Commissioner of Internal Revenue by IRC [26 U.S.C. §§ ] 6223, 6224, 6228, 6229, 6231(a)(7), 6232, 6243, and 6244, and Treasury Order 150–10:
>
> . . . .
>
> 3. Authority to enter into and approve a written settlement agreement with one or more partners or shareholders with respect to the determination of partnership or subchapter S items and any items affected by such items for such partnership or S corporation taxable year is delegated to:
>
> a. Chiefs and associate chiefs of appeals offices;
>
> b. Appeals team chiefs as to their respective cases;
>
> c. Appeals officers in service centers and the Austin Compliance center but not as to their respective cases;

> d. Revenue agents (reviewers) (grade GS–11 and higher) in Examination Division or Office of Taxpayer Service and Compliance, Assistant Commissioner (International); and
>
> e. Revenue agents (grade GS–11 and higher) in service centers and the Austin Compliance Center.

DO 209.

DO 209 differs from DO 97 in three key ways. First, DO 209 concerns a more limited subject matter. As opposed to DO 97's general delegation of authority over closing agreements, DO 209 deals solely with agreements related to partnerships and S-corporations. Second, DO 209 authorizes a wider range of IRS employees to execute agreements concerning these matters. Third, and most importantly for purposes of this appeal, DO 209 does not contain the bar on execution of agreements when there are cases docketed before the Tax Court.

Given these distinctions, if DO 209, rather than DO 97, applied to the agreements with the Crowells and the Olcsvarys, then any question regarding Spooner's authority to execute the agreements evaporates. The fact that the Hoyt partnerships had matters docketed in the Tax Court would be inconsequential. Under DO 209, Spooner possessed the authority to execute the agreements, and the agreements would be valid.[3] The Court must, therefore, determine whether DO 209 or DO 97 was the governing delegation of authority.

## C. Specific vs. General Delegation

 Administrative orders delegating authority to agency officials and employees do not carry the full weight of statutes. At the same time, delegation orders and statutes share enough characteristics to warrant the Court's employing similar rules of construction. Among the standard methods for construing statutes,

---

**3.** Insofar as the Bankruptcy Court for the District of Oregon in *Klee* did not address the applicability of DO 209 in ruling that R.M. Spooner lacked authority to execute similar agreements, that court's opinion does not control the resolution of the present appeal.

courts recognize that "a specific statutory provision governs a general one." *Sprague v. General Motors Corp.,* 133 F.3d 388, 405 (6th Cir.1998). *See, e.g., Food & Drug Admin. v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 143, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000); *Edmond v. United States,* 520 U.S. 651, 657, 117 S.Ct. 1573, 137 L.Ed.2d 917 (1997); *United States v. Ware,* 161 F.3d 414, 423 (6th Cir.1998); *Gallenstein v. United States,* 975 F.2d 286, 290 (6th Cir.1992); *Harper v. Holiday Inns, Inc.,* 498 F.Supp. 910, 912 n. 2 (E.D.Tenn.1978). Comparing DO 97 and DO 209 in light of this rule of construction, the Court finds that DO 209 is the more specific delegation and, at least for that reason, should govern the agreements giving rise to this appeal.

According to its terms, DO 97 stems from the regulation empowering the Commissioner to enter into closing agreements with taxpayers, 26 C.F.R. § 301.7121–1. Although this regulation does not expressly cite 26 U.S.C. § 7121, it is clear that § 7121, which authorizes the Secretary to enter into closing agreements, is the legislative source for the Commissioner's—and thus other IRS employees'—ability to execute agreements relating to tax liability. DO 97 does not apply to any particular area of taxation or type of agreement. Instead, DO 97 serves as the general authority for the named IRS officials to execute closing agreements.

In comparison to that of DO 97, the delegation in DO 209 has a more limited and specific scope. The preamble of DO 209 identifies a number of provisions of the Internal Revenue Code ("the Code") to which it directly pertains. These listed sections are located within subchapters C and D of chapter 63 of the Code, the provisions for assessing tax on partnership and S-corporation items. 26 U.S.C. §§ 6221–45. Congress promulgated the Code sections dealing with tax treatment of partnership items as part of the Tax

Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248, 96 Stat. 324 (codified as amended in scattered sections of 26 U.S.C.) ("TEFRA"). According to the conference agreement giving rise to TEFRA's partnership provisions, Congress sought to streamline and unify the methods for determining tax treatment of partnership items. H.R. CONF. REP. No. 97–760, at 600–03, *reprinted in* 1982 U.S.C.C.A.N. 781, 1371–75.

To carry out Congress' goal of unifying partnership determinations, the IRS has formulated an intricate procedure for handling TEFRA matters. The extensive *TEFRA Handbook* (Court File No. 4, Ex. 15) contains language indicating that DO 209 serves as the principal delegation of authority for agreements regarding TEFRA partnership determinations. According to § 665 of the *TEFRA Handbook,* entitled "Who Must Execute Agreements:"

(1) All appeals agreement forms must be accepted by an authorized appeals person *per Delegation Order 209* .... The appeals forms will generally reflect a settlement based on hazards. Therefore, examination personnel have not been designated the authority to accept such settlements.

(2) Appeals personnel will execute agreements secured in nondocketed and docketed cases ....

(*Id.* at § 665) (emphasis added).

Placed in the appropriate statutory and regulatory context, it is clear that DO 209 serves a more specific purpose than DO 97. As opposed to DO 97, which concerns authority to execute settlements generally, DO 209 comprises part of an administrative mechanism directly geared toward discrete legislative goals. In this sense, DO 209 is the more specific delegation of authority, and because the agreements with the Crowells and the Olcsvarys were executed within the scope of this delegation,[4]

---

4. The agreements served to settle the tax liability of the Crowells and the Olcsvarys with

regard to items from the Hoyt partnerships. This type of settlement is precisely the variety

DO 209 governs under the circumstances of this case.

### D. Agency's Construction

■■■■■ The Court's conclusion that DO 209 is the governing authority over the agreements with the Crowells and the Olcsvarys is bolstered by the meaning that the IRS ascribes to it. Courts will ordinarily defer to an agency's interpretation of its own regulations. *St. Francis Health Care Centre v. Shalala*, 205 F.3d 937, 943 (6th Cir.2000); *Elaine's Cleaning Serv., Inc. v. United States Dep't of Labor*, 106 F.3d 726, 729 (6th Cir.1997); *Bobo v. United States Dep't of Agric.*, 52 F.3d 1406, 1412 (6th Cir.1995). The Sixth Circuit has explained that it will "defer to an administrative agency's interpretation of its own rule or regulation unless it is plainly erroneous or inconsistent with the regulation." *Arctic Express, Inc. v. United States Dep't of Transp.*, 194 F.3d 767, 771 (6th Cir. 1999).

■■■ DO 209 is not an actual federal regulation. As an operating procedure promulgated by the Commissioner, the Court grants a certain degree of deference to it, but this deference is far from controlling. *Reno v. Koray*, 515 U.S. 50, 60–61, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995) (giving "some deference" to internal agency guideline of Bureau of Prisons); *Orr v. Hawk*, 156 F.3d 651, 655 (6th Cir.1998) ("limited deference" given to agency's internal rule); *Tillmon v. Hemingway*, 119 F.Supp.2d 705, 708 (E.D.Mich.2000) ("some deference" should be given to Bureau of Prisons program statements). Just the same, examining how the IRS understands the scope and effect of DO 209 will aid the Court in resolving whether DO 209 governs the agreements giving rise to this appeal. *See, e.g., United States v. Kroger Co.*, 566 F.Supp. 1432, 1436 (S.D.Ohio 1983) ("the Commissioner's interpretation of the IRS' own manual provisions is entitled to some deference").

addressed in the TEFRA statutes and proce-

The IRS's interpretation of DO 209 is largely contained in the *TEFRA Handbook* (Court File No. 4, Ex. 15). Relevant portions of the *TEFRA Handbook* reveal that the IRS intended DO 209 to pertain to the precise circumstances of this appeal. For instance, section 665 of the *TEFRA HANDBOOK* specifically states that DO 209, rather than DO 97, designates the officials authorized to accept and execute settlement agreements designating TEFRA partnership items. (*Id.* at § 665). The same section states that appeals personnel may execute agreements in docketed and nondocketed cases, an action explicitly prohibited by DO 97. (*Id.*). Moreover, section 690 of the *TEFRA Handbook* sets out special procedures applicable to settlement negotiations for partnerships with matters docketed before the Tax Court. (*Id.* at § 690). If the IRS understood DO 97 to be the governing delegation order, then such procedures would not only be unnecessary, they would also be improper.

In its brief before this Court, the IRS offers a further explanation for DO 209's extending settlement authority to a wider range of employees than listed in DO 97. This explanation is particularly reasonable in light of Congress' goal in TEFRA to unify the determinations of partnership items. As the IRS points out, partnerships benefitting from TEFRA, such as the Hoyt partnerships in which the Crowells and the Olcsvarys participated, may include thousands of individual members. (Court File No. 4, p. 7). TEFRA's requirements for partnership treatment have resulted in the IRS's focusing on partnerships as entities, rather than looking to each member individually. (*Id.*). One of the principal provisions of TEFRA relevant to partnerships mandates that settlement agreements with one partner have binding effect over other partners regarding determination of partnership items, and that any partner not a party to a settlement agreement with one partner

dures.

has the right to a consistent agreement. 26 U.S.C. § 6224(c). Accordingly, the IRS explains:

> Because the IRS is often required to execute dozens of identical agreements, the IRS delegated TEFRA settlement authority in Delegation Order 209 to lower-level employees than in Delegation Order 97. These lower-level employees administer the rote act of executing identical agreements.

(Court File No. 4, p. 16).

Moreover, even though it plays a role in carrying out TEFRA, the IRS does not contend that DO 209's delegation of authority to execute settlements stems wholly from TEFRA. The IRS explains that the ability of IRS employees to settle any tax liability matters derives from the general statutory authorization for settlement, 26 U.S.C. § 7121. Thus, even though DO 209 does not explicitly cite to § 7121, the IRS argues that the settlement authority delegated in DO 209 emanates from the general authority of the IRS to settle tax liability. Along similar lines, the Fifth Circuit has recognized that settlement agreements executed pursuant to the TEFRA provisions "are closely analogous to the long-established closing agreements authorized under section 7121 of the Code." *Alexander v. United States*, 44 F.3d 328, 332 (5th Cir.1995).

This explanation, in light of the role DO 209 plays in carrying out TEFRA, is reasonable. Even though the Court does not grant the same degree of deference to agency interpretation of a delegation order as it would a federal regulation, the Court finds that the IRS's explanation of the nature and function of DO 209 is persuasive. This explanation reinforces the Court's conclusion that as a delegation order of more specific scope than DO 97, DO 209 governed the execution of the agreements settling the tax liability of the Crowells and the Olcsvarys.

## IV. Conclusion

 Having determined that DO 209 was the pertinent delegation order regarding the agreements with the Crowells and the Olcsvarys, the Court concludes that R.M. Spooner possessed the authority to execute the agreements. Accordingly, these agreements are enforceable against both parties.